Bernard S. Meyer, J.
In this declaratory judgment action, plaintiff insurance company is awarded judgment declaring that on October 23, 1967, defendant Ann T. Giugno had no insurance in force with it and that it is not obligated to defend her in the actions brought against her by defendants K & G Service Inc. and Janice Christian, nor to pay any judgment that may be recovered in those actions.
The car that defendant Giugno was driving on October 23, 1967 was a 1965 Buick. She concedes that she never received any policy of insurance from plaintiff, that she applied on February 2, 1965 for coverage on a 1962 Volkswagen and a 1963 Rambler, that the only document she received in that transaction was an application form, and that she paid premium for only one year and has never paid any additional premium. *1093 She contends, however, that plaintiff is estopped to deny coverage. Plaintiff denies that defendant Giugno ever paid it any premium, and says that while it afforded her temporary coverage in 1965 for the Volkswagen and Rambler and temporary coverage in 1967 for a 1958 Chevrolet and a 1966 MG, all were canceled for nonpayment of premium, the first effective March 12,1965 and the second effective August 16, 1967.
While it is said that insurance contracts cannot be created by estoppel (16A Appleman, Insurance Law and Practice, p. 339, § 9090; 44 C. J. S., Insurance, p. 1091, § 275, subd. a, par. [1]), no New York case on either side of that precise question has been found (but, see, Simpson v. Phoenix Mut. Ins. Co., 30 A D 2d 265, 268, affd. 24 N Y 2d 262; Callahan v. Amer. Motorists Ins. Co., 56 Misc 2d 734; Horrmann v. Prudential Ins. Co., 192 Misc. 758). There are New York cases recognizing that an insurer under an issued policy may be estopped to assert noncoverage (O’Dowd v. American Sur. Co., 3 N Y 2d 347; Schultz & Co. v. Camden Fire Ins. Assn., 304 N. Y. 143; Moore Constr. Co. v. United States Fid. & Guar. Co., 293 N. Y. 119; Gerka v. Fidelity & Cas. Co. of N. Y., 251 N. Y. 51; see Ann. 1 ALR 3d 1139; Ann. 38 ALR 2d 1148, or a defense such as nonco-operation, see Ann. 70 ALR 2d 1197). Such an estoppel is provable under a general denial, Feinberg v. Allen (208 N. Y. 215), but must be established by the person claiming it by a preponderance of the evidence (Gibson Elec. Co. v. Liverpool & London & Globe Ins. Co., 159 N. Y. 418, 427; see Ann. 4 ALR 3d 361). It is not necessary for the court to decide whether in New York insurance contracts can be created by estoppel, for it concludes that even if it be assumed that a policy was so created in February, 1965, the evidence does not establish an estoppel to deny coverage of a 1965 Buick on October 23, 1967.
The facts upon which plaintiff relies to establish an estoppel are (1) that the application form she received had in its upper left hand corner a box in which appeared the printed words “Policy Number” and the handwritten letters and figures “NY 570-25-68”, (2) that on February 22, 1965 the Volkswagen was damaged and in connection therewith she received a letter dated April 28,1965 addressed to “ Dear Policyholder ” and was ultimately paid $532, (3) that when she traded the Rambler for the Buick in August, 1965 the car salesman" called plaintiff’s office to get a “ form ” and the registration was then transferred to the Buick, (4) that in June, 1966 the Buick was in a minor accident which she reported to plaintiff and received a form letter dated June 29, 1966 addressed to “ Dear Policy *1094 holder ” acknowledging receipt of the report of loss, (5) that plaintiff’s file contains an office memorandum in relation to that report showing that the policy had expired March 12, 1965 and had covered a ’62 Volkswagen and a ’63 Rambler, but that “ The auto described by Giugno on her MV 104 is a ’65 Buick ”, (6) that plaintiff’s file contains a print-out form (part of Exhibit 2, bearing printed number OP-210), apparently prepared on July 18, 1966, relating to the same report which shows “no coverage policy canc. 3/27/65 ” and contains the notation “ No 65 Buick ”, (7) that plaintiff’s file shows that on June 16, 1967 she called plaintiff’s Huntington office and informed the interviewer that she had ^purchased a 1958 Chevrolet and wished “ same coverage as carried on 65 Buick
It is evident that defendant Giugno thought she was insured by plaintiff and that the insurance covered the 1965 Buick for she reported to plaintiff the June, 1966 accident in which it was involved, referred to it in adding the 1958 Chevrolet to the policy and inserted plaintiff’s name as her insurance carrier when registering the Buick in 1966 and 1967. The question, however, is not only what defendant Giugno believed, but also whether plaintiff was guilty of such misleading conduct “ as would, if it were not estopped, operate as a fraud on the party who has taken or neglected to take some action to his own prejudice in reliance upon it ” (Schultz & Co. v. Camden Fire Ins. Assn., 304 N. Y. 143, 147-148, supra). Since defendant Giugno testified that she had paid one year’s premium in March, 1965, it is clear that she knew that whatever policy she thought she had required an annual premium. She therefore would not be justified in relying on any action of plaintiff’s unless that action misled her into not paying when due the premium that would have kept the policy in force to and including October 23, 1967 (see More v. New York Bowery Fire Ins. Co., 130 N. Y. 537; Goldberg v. Colonial Life Ins. Co. of Amer., 284 App. Div. 678, 681, app. dsmd. 308 N. Y. 958). If we measure backward from that date, the premium would have been due October 24, 1966; if we measure forward from February 2, 1965 the 1967 premium would have been due February 2, 1967. The only actions after October 24, 1966 on which plaintiff relies are (a) the failure to send her a premium notice, and (b) the failure after her June 16, 1967 call to advise her that the ’65 Buick was not covered. Failure to send a premium notice cannot have misled defendant Giugno for she knew an annual premium was required. Nor is the failure to advise her after the June 16, 1967 call that the ’65 Buick was not covered a sufficient basis for an estoppel for by that time the policy on the Buick, had there been one, *1095 would have expired for nonpayment. While defendant Griugno could have obtained insurance before October 23, 1967 had she been informed in June that she had no such coverage, it must be remembered that her reference to the ’65 Buick was not a direct inquiry concerning coverage, but a collateral reference which plaintiff had no reason to investigate in depth since the new coverage requested and temporarily granted was, the court finds, canceled effective August 16, 1967 by letter mailed to defendant Griugno on July 26, 1967 for failure to return the applications and pay the premium. Failure to react to such a collateral reference to the ’65 Buick cannot be characterized as conduct which would operate as a fraud on defendant Griugno. Noteworthy in this connection is the fact that when she made a direct inquiry concerning coverage on the 1965 Buick she got a direct answer.
While the foregoing is sufficient to dispose of the claimed estoppel, the court notes with respect to the fact numbered (1) above that the application form also contained a block printed in red entitled “ to order your policy ” which set forth instructions concluding “ Mail application with Tour Payment in Postage-paid return envelope”, so defendant Griugno cannot have been misled by the reference in the application to “ Policy Number”; with respect to the fact numbered (2) above that while it may have created an estoppel as to the 1965 accident in which the Volkswagen was involved, defendant Griugno was not misled with respect to the ‘1 insurance ’ ’ thus established beyond the end of that policy year, that is February 2, 1966; with respect to the fact numbered (3) above, that whatever it was that the Buick salesman got, it was not a certificate of insurance, no insurance certificate having been required on á transfer of registration from one vehicle to another in the year 1965 (letter of Sept. 21,1966 of the 'Commissioner of Motor Vehicles and 1963 question and answer sheet issued by the Commissioner, which were referred to at the trial and of both of which the court can and does take judicial notice; see Richardson, Evidence [9th ed.], § 28); and with respect to the facts numbered (4), (5) and (6) above that while they may have created an estoppel as to the 1966 accident in which the Buick was involved, defendant Griugno was not misled with respect to the “ insurance ” thus created beyond the end of that policy year, that is, February 2, 1967.
The court has not overlooked the provisions of section 313 of the Vehicle and Traffic Law. Plaintiff’s evidence establishes, and the court finds, that plaintiff filed no certificate of insurance for any of the ’62 Volkswagen, the ’63 Rambler or the ’65 Buick. *1096 While section 313 of the Vehicle and Traffic Law has modified the common-law right to terminate a policy of insurance for nonpayment of premium unless notice of termination is given as required by that section, the section is expressly limited to a ‘ ‘ contract of insurance or renewal thereof for which a certificate of insurance has been filed ’ ’, and, therefore, is not applicable to this case (see Tomala v. Peerless Ins. Co., 20 A D 2d 206, affd. 14 N Y 2d 862; Teeter v. Allstate Ins. Co., 9 A D 2d 176, affd. 9 N Y 2d 655; La Barre v. Nationwide Mut. Ins. Co., 16 A D 2d 842; Ruffin v. State-Wide Ins. Co., 56 Misc 2d 179; Cortina v. General Ins. Co. of Amer., 40 Misc 2d 916). Defendant Giugno’s reliance on the presumption of regularity arising from registration of her vehicle is thus misplaced.