■ ANNETTE MAY, Appellant, v MUTUAL BENEFIT LIFE INSURANCE COMPANY et al., Respondents.

On or about November 13, 1980, the plaintiff's decedent, Robert Searl May, signed an application for membership in the defendant Uniformed Services Benefit Association (hereinafter USBA), and for coverage under the group term life insurance policy issued by the defendant Mutual Benefit Life

Insurance Company (hereinafter Mutual Benefit Life), and submitted it to the USBA, naming the plaintiff as his primary beneficiary. The decedent indicated on the application that he desired the "immediate coverage" plan, and accordingly paid $34.50, covering the first two months' premiums and a $2 membership fee in the USBA. The application further indicated that the decedent had been hospitalized in October 1980 for a "nervous disorder", and in June 1975 for a thyroid operation. At the bottom of the one-page application, there was a certification statement signed by the decedent, which, in pertinent part, stated: "I understand that (a) any insurance for which evidence of insurability is required will not become effective until the date such evidence is furnished to and found to be satisfactory by Mutual Benefit Life."

On or about December 12, 1980, after receiving the application and sending it to the medical director of Mutual Benefit Life to be reviewed, the executive director of USBA promptly wrote a letter to the decedent indicating that in order to determine his eligibility for coverage, certain further information about his thyroid operation and nervous disorder was needed. This information was never provided, and Mr. May died on January 4, 1981. The defendants, who apparently were not informed of the decedent's death, sent him follow-up letters which again asked for further information about the decedent's thyroid operation and nervous disorder. Finally, on or about March 13, 1981, Mutual Benefit Life sent a letter to the decedent informing him that due to his failure to provide them with the necessary further information, they were denying his request for coverage under the group life insurance policy and refunded his initial payment. Thereafter, in October 1981, the plaintiff requested payment of the proceeds pursuant to the policy, which was denied by the defendants on the ground that the decedent's application for coverage had never been approved.

Where an insurance contract is clear and unambiguous, its proper interpretation is a matter of law which the court may properly determine on a motion for summary judgment (see, Breed v Insurance Co. of N. Am., 46 NY2d 351, 355). Where an application for life insurance coverage is clear and unambiguous, its proper interpretation is also a question of law to be decided by the court on a motion for summary judgment (see, Erath v Prudential Ins. Co., 25 AD2d 707; Corning v Prudential Ins. Co., 248 App Div 187, affd 273 NY 668). In this case, the application form clearly and unequivocally provided that in any case where Mutual Benefit Life deemed it necessary to

have additional evidence of insurability, no insurance would become effective until such evidence was provided and found to be satisfactory by Mutual Benefit Life. Upon receiving the decedent's application, the defendants promptly reviewed it and informed him that further medical information was needed to determine his insurability. This information was never provided, and the defendants consequently denied his application for coverage. It was, therefore, clearly proper for the defendants to deny the plaintiff's request for payment of proceeds under the group policy since her decedent was never effectively covered by it *(see, Erath v Prudential Ins. Co., supra; Corning v Prudential Ins. Co., supra)*. Mangano, J. P., Bracken, Brown and Eiber, JJ., concur.