Leo Brown, J.
This is an action brought by Whitestone General Hospital as the beneficiary of a life insurance policy to recover the proceeds of the aforesaid policy covering Dr. Paul Matlin, the insured.
The plaintiff moves to dismiss the defendant’s affirmative defenses pursuant to CPLR 3211 on the grounds that the defenses have no merit and for a protective order vacating paragraphs numbered “ 1 ”, “ 2 ” and “ 4 ” of the notice to discover and inspect. Both sides agree that this motion should be treated as one for summary judgment pursuant to CPLR 3211 (subd. [c]) and the court will so treat it.
The pertinent facts are as follows: The plaintiff, a proprietary hospital with 26 partners, requested one Edward S. Levine to secure life insurance for all the partners in an amount equal to their respective interest in the plaintiff hospital. Mr. Levine contacted several insurance companies in an attempt to secure insurance favorable to the plaintiff. After seeing an advertisement in a trade newspaper, Mr. Levine contacted the defendant and began negotiations for an insurance policy. During negotiations, Mr. Levine supplied the defendant with all requested information. In November or December, 1967, the defendant proposed a type of policy characterized as “ guaranteed issue basis ” life insurance. Early in January, 1968, the plaintiff took under advisement the defendant’s proposal. In early February, 1968, Mr. Levine was requested by the plaintiff to obtain written verification of the proposed insurance. In a letter from the defendant dated February 15,1968, the defendant “ verified ” the previous conversation and agreed to provide ‘1 guaranteed issue coverage ’ ’ in accordance with its proposal and conditioned upon certain requirements which are not relevant to this decision. The plaintiff then requested Mr. Levine to ask the defendant whether it could pay premiums monthly instead of annually. Mr. Levine made the request for monthly payments and it was agreed to by the defendant.
At some time during these negotiations, the defendant supplied Mr. Levine with sufficient application forms for all 26 doctors. On March 29,1968, Mr. Levine appeared in the defendant’s office with 23 signed applications and a check for the full amount of the monthly premium. The check was dated February 15, 1968, and was given to Mr. Levine on that date. The application of Dr. Matlin was not included among the 23 applications supplied to the defendant on March 29, 1968. The defendant *658 credited the premiums for 23 policies to its premium account and credited the remaining money to a “ suspense ” account pending the receipt of the remaining applications.
At this point there is some discrepancy in the facts. The plaintiff contends that 26 policies were issued to Mr. Levine on March 29, 1968, including one for Dr. Matlin. The defendant contends that only 23 policies were issued and that Dr. Matlin’s policy was not issued until April 3, 1968. This discrepancy has no bearing on the decision herein.
On March 31, 1968 Dr. Matlin died of cancer. On April 3, 1968 Mr. Levine, without knowledge of Dr. Matlin’s death delivered Dr. Matlin’s application and either received a policy for him or had received it previously. In any event, the policy was dated March 29, 1968 with an issue date of April 4, 1968. Thereafter the defendant received two letters from the plaintiff both dated April 5, 1968. The first letter “ accepted ” the 26 policies on the lives of the partners. The second letter informed the defendant of Dr. Matlin’s death and requested the necessary forms in order to recover the proceeds.
The court is faced with the issue as to whether there was an insurance policy in effect at the time of Dr. Matlin’s death.
The plaintiff contends that the defendant made an offer which was accepted upon payment of the premium. The defendant contends that an offer must be made by submission of a signed application by the proposed insured which must be accepted by the insurance company. The Insurance Law (§ 146, subd. 3) provides that in order to enter into a contract of life insurance, the person to be insured must apply therefor or consent in writing to the making thereof. Since this is an individual policy, the Insurance Law requires an application. The insurance policy itself states that ‘ ‘ this policy is made in consideration of the signed application for this insurance and of the premium, payable as specified in the policy ’ ’. It is unambiguous on the face of the policy that before the policy can take effect, the insured must submit, a signed application.
An exception to this is in the case of group life insurance (Insurance Law, § 146, subd. 3). For the purpose of this statute:, Insurance Law (§ 204, subd. 1, par. [a]) defines group life insurance. A pertinent portion of the definition heads: “ Such policy [group life insurance] shall provide for the payments of all benefits thereunder # * * to the person insured or to some beneficiary or beneficiaries other than the . employer ”. (Italics added.)
For the purpose of this definition a partner is considered an employee of the partnership. Further, Richards, Insurance *659 (vol. 1, § 15, p. 55) states: “ it [group life insurance] is not indemnity insurance for the benefit of the employer, but insurance upon the life of the employee for his personal benefit and the protection of his beneficiaries ”. It is quite clear that in the case at bar we are not dealing with group insurance but rather with an individual policy by an insured, with the employer as the beneficiary.
Further the application states: “ If this application is accepted by the Company, the policy applied for herein, together with this application shall constitute the entire contract between the parties concerning the insurance therein provided.”
Thus, when the application and the policy are read together, it becomes clear that certain conditions precedent must be met before this insurance policy can ripen into a contract. There must be a signed application, payment of the premiums and an acceptance by the insurance company. (Goldberg v. Colonial Life Ins. Co., 284 App. Div. 678; Hughes v. John Hancock Mut. Life Ins. Co., 163 Misc. 31, affd. 254 App. Div. 570.)
Whether Mr. Levine is to be considered an agent of the insured or the insurer, it is obvious that the application was not delivered or accepted by the insurer prior to Dr. Matlin’s death. Since the conditions precedent to this contract were not met prior to Dr. Matlin’s death, there was no policy of insurance in effect on the date of his death and, therefore, there can be no recovery by the beneficiary.
The fact that the policy was dated March 29, 1968 is not conclusive as to the time of its actual subscription. (Earl v. Shaw, 1 Johns. Cas. 314.) Even though a policy is by its terms to take effect at a certain time it may be shown that, from want of delivery, failure to comply with some condition precedent or other cause, it did not take effect until a subsequent time, a different date or not at all. (Jackson v. Bard, 4 Johns. Cas. 230; 9 Couch, Cyclopedia of Insurance Law [2d ed.], § 39:68, p. 477.) As previously stated, there was a failure to comply with a condition precedent and the insurance contract did not take effect. Accordingly, the date of the contract is not conclusive. The case of Lightbody v. North Amer. Ins. Co. (23 Wend. 18) is not contrary to this position since there a valid policy of insurance existed, the sole question being the date that policy took effect.
Upon reaching this conclusion, it is unnecessary to delve into the other issues and contentions raised by the parties or to decide the second branch of the plaintiff’s motion.
CPLR 3211 (subd. [c]) provides that a motion to dismiss defenses may be treated as a motion for summary judgment. *660 Accordingly, this motion searches the record and the court may grant judgment to the plaintiff or the defendant. (Rand v. Hearst Corp., 31 A D 2d 406; Smith v. Helbraun, 21 A D 2d 830.)
Summary judgment granted to the defendant dismissing the complaint.